Filed 2/26/14  In re Ex.F. CA2/3 CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re Ex. F., et al., Persons Coming Under the Juvenile Court Law. | B250624 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>VERONICA N.,<br><br>        Defendant and Appellant. | (Los Angeles County Super. Ct. No. CK96792) |

        APPEAL from an order of the Superior Court of Los Angeles County, Stephen C. Marpet, Temporary Judge.  (Pursuant to Cal. Const., art. VI, § 21.) Affirmed.

        Daniel G. Rooney, under appointment by the Court of Appeal, for Defendant and Appellant.

        Office of the County Counsel, John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, and Tracey F. Dodds, Deputy County Counsel, for Respondent.

Veronica N. (mother) appeals the juvenile court's order removing her daughters, Ex. F., By. M. and Isabella G., from her custody. Mother contends that (1) there was no substantial evidence that the children would be in "substantial danger" if returned to mother, or that (2) there were no reasonable means by which the children could be protected without removing them from mother's custody. We disagree and affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Mother and her boyfriend, Gerardo G. (father/stepfather), have one child together, Isabella. Mother also has two older children, B. and E., by different fathers. Isabella is one years old, By. is seven years old, and Ex. is 11 years old.

In June 2012, a mandated reporter told the Department of Children and Family Services (Department) that By. had arrived at school in hysterics. By. said that mother and father/stepfather had argued that morning, and she had heard father/stepfather throw things against the bedroom door. She also said that she suffered anxiety and stomachaches due to mother and father/stepfather's constant fighting. The referral was closed as inconclusive.

On December 1, 2012, the police responded to a report of domestic violence between mother and father/stepfather. Father/stepfather had called mother to come by his property to pick up diapers for Isabella. Mother and father/stepfather were separated at the time, and mother lived across the street in the home of maternal grandparents.

When mother arrived, father/stepfather was sitting outside in his parked truck. Mother started shouting and father/stepfather asked mother to leave. As she was leaving she slammed the truck door on father/stepfather, hitting his shin.

2

Father/stepfather then threw a beer bottle in mother's path, and mother began picking up bottles from the ground and throwing them at the truck while father/stepfather sat inside of it. The third bottle hit the windshield and cracked it.

Father/stepfather then exited the truck and grabbed mother by her jacket collar. He swung her back and forth and then forced her to the ground. Once mother had calmed down, father/stepfather released her and told her to go home. Mother then charged him, pinned him up against the tool shed, and began to punch, hit and slap him. Father/stepfather again grabbed mother's collar and swung her back and forth. He once again pulled mother to the ground, and then called the police.

Law enforcement took the children into custody and referred the case to the Department. The deputy told the Department social worker that both parents were "mutual aggressors." The deputy further said that the children were not present for the altercation, but that both parents said they had argued and thrown things in front of the children while at home on other occasions.

The social worker interviewed the family. By. and Ex. told the social worker they had not witnessed physical altercations between mother and father/stepfather, but that mother and father/stepfather argued every day. By. also said that mother "hits her all over if she does something wrong" and that the blows hurt her.

Father/stepfather confirmed that mother had hit By. Father/stepfather also said that mother yelled at the children a lot. He further reported that he had moved out of their home because his arguments with mother had "turn[ed] physical." The Department placed the children with maternal grandparents.

A petition was filed on December 5, 2012, and alleged that mother and father/stepfather have a history of engaging in violent altercations in the children's presence which endangered the children's physical health and safety. At the detention hearing, the juvenile court found a prima facie case for detaining the children. The court ordered the Department to provide family reunification services to mother and referrals for domestic violence and parenting counseling. The children remained in the care of maternal grandparents.

The social worker interviewed mother again on January 6, 2013. Mother said that the domestic violence with father/stepfather started when she was pregnant with Isabella. At that time, she began to lose her temper easily, and would verbally confront him, which occasionally prompted him to respond by yelling and cursing. Mother said that the older children may have been present during these arguments, and that, on one occasion, she threw a perfume bottle and deodorant at father/stepfather.

Father/stepfather said that he always tried to calm mother down by agreeing with her or walking away, but that mother "would insist on arguing within near the proximity to the children." However, he alternatively said that the children were always asleep in their beds when he argued with mother, and that the only physical confrontation he had with mother was the incident on December 1. Both mother and father/stepfather indicated that they wanted to reconcile with each other as soon as possible.

On March 20, 2013, the Department informed the juvenile court that mother had completed a parenting program and was attending domestic violence, anger management, and spiritual classes, as well as individual counseling with a licensed

4

therapist. Mother's therapist wrote a letter attesting to mother's "motivat[ion] to comply with her treatment plan," and stating that mother "recognize[d] the areas that she needs to strengthen in her life."

Mother was living in an apartment located adjacent to maternal grandparents' home, and saw the children daily. She said that she had remained civil with father/stepfather and "very much wanted to reconcile with [him]." Father/stepfather was reported to be attending parenting and anger management classes, substance abuse counseling, and therapy. However, he had recently had a dispute with maternal grandmother over visitation and had threatened her, saying "she better not disrespect his family, because she knew what he was capable of, and that she would see what would happen to her."

On June 6, 2013, the juvenile court held a jurisdictional and dispositional hearing. The Department's latest report, filed that day, reported that father/stepfather had recently lost his temper at his sister and thrown a remote against the wall. The remote had bounced and hit paternal grandfather who required emergency medical care. The Department further reported that mother continued to live on the same property as maternal grandparents, and was still attending domestic violence and anger management classes. Mother had denied having any contact with father/stepfather.

At the hearing, the Department argued that mother and father/stepfather had a history of engaging in violent altercations in the children's presence. Mother's counsel acknowledged that there was a history of these incidents between the parents,

5

but denied that they had occurred in the children's presence. The court sustained the allegations under Welfare and Institutions Code section 300, subdivision (b).[1]

With respect to disposition, mother's counsel argued there was no present risk of substantial danger to the children should they be returned to mother's care because the incident of domestic violence was seven months old, mother had been participating in domestic violence counseling and anger management classes for over six months, and she had completed a parenting course and individual counseling.

The court ordered that the children be removed from their parents' custody and found "by clear and convincing evidence there's a substantial danger to the minors' physical and mental well-being. There is no reasonable means to protect without removal. And reasonable efforts have been made to prevent the removal." Mother timely appealed.

## CONTENTIONS

Mother contends there was no substantial evidence that (1) the children would be in "substantial danger" if returned to mother, or that (2) there were no reasonable means by which the children could be protected without removing them from mother's custody.

## DISCUSSION

---

[1] Section 300, subdivision (b) provides a basis for juvenile court jurisdiction when the child has suffered, or there is a substantial risk the child will suffer, serious physical harm or illness as a result of the parent's failure to adequately supervise or protect the child.

Welfare and Institutions Code, section 361, subdivision (c), the statute governing removal, prohibits the juvenile court from removing a minor child from the physical custody of the parent(s) with whom the child resided at the time the petition was initiated, "unless the juvenile court finds clear and convincing evidence . . . . [¶] [t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's . . . physical custody." On appeal, "the substantial evidence test applies to determine the existence of the clear and convincing standard of proof . . . . " (*In re Amos L.* (1981) 124 Cal.App.3d 1031, 1038.)

Mother contends that there was no showing of substantial danger of harm to the children because there was only evidence of one incidence of domestic violence between her and father/stepfather, and the children had never seen them strike each other. In fact, there was evidence of multiple incidents of domestic violence between mother and father/stepfather, and that the children had been exposed to this violence: (1) in a prior referral to the Department, By. was reported to have said that she heard father/stepfather throw things while arguing with mother; (2) both mother and father/stepfather told the police that they had argued and thrown things in front of the children; (3) father/stepfather said he had moved out of his home with mother because their arguments had "turn[ed] physical;" and (4) mother acknowledged having thrown a perfume bottle and deodorant at father/stepfather, and said that her older children may

7

have been present at that time.[2] Furthermore, although the Petition does not include allegations that mother physically abused By., the statements by By. and father/stepfather that mother hit By. provide further support for the court's conclusion that mother had a pattern of violence.

Mother also argues that the court could have released the children to her care under the supervision of the Department because the evidence showed she had made progress by completing classes and counseling, and had had no contact with father/stepfather. Although mother denied having contact with father/stepfather at some time prior to the jurisdictional/dispositional hearing, there was evidence she had recently had contact with him. In late March 2013, mother said that she had "remained civil" with father/stepfather which suggests that she was still in contact with him at that time, less than three months before the hearing. In addition, mother and father/stepfather still lived across the street from each other.

Based on this evidence, it was reasonable for the court to conclude that the children would still be exposed to the risk of day-to-day domestic violence if returned to mother's custody even if the Department exercised occasional supervision over them. Mother and father/stepfather continued to live in close vicinity to each other, had recently been in contact, and desired to be reunited. In addition, father/stepfather had recently demonstrated on two occasions that he was still prone to serious violence. Accordingly, there was substantial evidence supporting the court's finding that the

---

**2**     At the jurisdictional/dispositional hearing, mother's counsel also acknowledged that mother had a history of domestic violence with father/stepfather.

children would be in substantial danger if returned to mother's custody, and that there were no reasonable means by which the children could be protected without removal.

## *DISPOSITION*

The dispositional order is affirmed.

## *NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS*

CROSKEY, J.

WE CONCUR:

KLEIN, P. J.

ALDRICH, J.

9